**LATHAM & WATKINS LLP**
Kevin M. McDonough
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com

*Attorneys for Petitioner Adam Ferrari*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADAM FERRARI,<br><br>        Petitioner,<br><br>    v.<br><br>BARCLAY LEIB,<br><br>        Respondent. | Case No.  24-7753<br><br>Motion Day:  August 5, 2024<br><br>**Oral Argument Requested**<br><br>Underlying Civil Action: *Adam Ferrari v. William Francis,* Case No. 3:23-cv-00455-S, as pending in the U.S. District Court for the Northern District of Texas |

## PETITIONER ADAM FERRARI'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BARCLAY LEIB TO PRODUCE DOCUMENTS IN RESPONSE TO A SUBPOENA DUCES TECUM AND TO COMPLY WITH A SUBPOENA AD TESTIFICANDUM

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT .........................................................................................................9

I.    THE SUBPOENA IS VALID AND ENFORCEABLE IN THIS
      COURT. .......................................................................................................9

II.   THE REQUESTED INFORMATION IS RELEVANT TO THE
      UNDERLYING ACTION. .........................................................................10

      A.    Documents Related to Mr. Leib's Contacts with Mr. Francis
            and About Mr. Ferrari and Phoenix are Highly Relevant ...................11

      B.    Mr. Leib's Confidentiality Objection Fails. ........................................15

III.  THE COURT SHOULD ORDER MR. LEIB TO ACCEPT SERVICE
      OF THE SUBPOENA AD TESTIFICANDUM ...........................................16

IV.   CONCLUSION...........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
No. 14-4046 PGS, 2014 WL 4272732 (D.N.J. Aug. 28, 2014) .........................15

*Cordius Trust v. Kummerfeld*,
No. 99 CIV. 3200(DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) .................17

*Gould v. O'Neal*,
No. 17-100 (JMV), 2019 WL 4686991 (D.N.J. Sept. 26, 2019).................11, 14

*Halawani v. Wolfenbarger*,
No. 07–15483, 2008 WL 5188813 (E.D. Mich. Dec. 10, 2008) .......................16

*N.J. Bldg. Laborers' Statewide Benefit Funds v. Torchio Bros., Inc.*,
No. 08–552, 2009 WL 368364 (D.N.J. Feb. 11, 2009) ......................................16

*OMS Invs., Inc. v. Leb. Seaboard Corp.*,
No. 08-2681 (AET), 2008 WL 4952445 (D.N.J. Nov. 18, 2008) ...............11, 14

*Ultradent Prods., Inc. v. Hayman*,
No. M8-85 RPP, 2002 WL 31119425 (S.D.N.Y. Sept. 24, 2002) ....................17

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
No. 2:09-cv-00480-JFC, 2013 WL 2134101 (W.D. Pa. Feb. 15, 2013) ............................................................................................................15

### RULES

Fed. R. Civ. P.
26.........................................................................................................................11
34....................................................................................................................1, 10
45...................................................................................................................*passim*

N.J. Ct. R. 4:4...........................................................................................................18

N.Y. C.P.L.R. § 308(4) ............................................................................................18

Pursuant to Rules 45 and 34(c) of the Federal Rules of Civil Procedure, Adam Ferrari ("**Ferrari**") respectfully requests that this Court order Barclay Leib ("**Leib**") to: (1) comply with the subpoena *duces tecum* served on him; and (2) accept service of—and comply with—the subpoena *ad testificandum* issued in *Ferrari v. Francis*, N.D. Texas, No. 3:23-cv-455 (the "**Texas Action**").[1]

## INTRODUCTION

On April 13, 2024, Mr. Ferrari, the Plaintiff in the Texas Action, served a narrowly-tailored third party subpoena (the "**Document Subpoena**") targeting highly relevant documents that reside in Mr. Leib's possession.  Put simply, Mr. Leib's conduct since he was served with the Document Subpoena has been evasive and dilatory.  As detailed below, after weeks of discussion with Mr. Leib's counsel, Mr. Leib produced a single email chain that is incomplete.  That document references additional relevant documents, which Mr. Leib now refuses to produce. Mr. Leib's counsel has acknowledged that Mr. Leib possesses other documents and communications that are responsive to the Document Subpoena but has refused to produce these materials because they are allegedly confidential and—in Mr. Leib's

---

[1] Sand Spring Advisors LLC was also served with a document subpoena requesting the same information.  Long Decl., Ex. 1, Ex. 11.  Mr. Ferrari understands that Mr. Leib is the principal and founder of this entity, so this Motion to Compel is directed at both Mr. Leib and Sand Spring, but Mr. Leib's personal compliance with the Document Subpoena would also satisfy the obligations of Sand Spring.

counsel's view—not relevant to the claims at issue in the Texas Action. Neither objection is well taken.

In addition, as detailed herein, despite the fact that Mr. Ferrari has met and conferred with Mr. Leib's counsel regarding his response to the Document Subpoena for months, his counsel has refused to accept service for a subsequent deposition subpoena (the "Deposition Subpoena").

Mr. Leib is likely in possession of highly relevant documents and testimony regarding the claims and defenses at issue in the Texas Action. Mr. Leib should thus be compelled to produce all documents responsive to the Document Subpoena and to accept service of and comply with the Deposition Subpoena immediately.

## STATEMENT OF FACTS

<u>The Texas Action</u>

Mr. Ferrari and William Francis are historical competitors in the oil and gas industry in North Dakota and other states. Mr. Ferrari filed the Texas Action in order to hold Mr. Francis accountable for making a series of defamatory comments within the oil and gas industry about Mr. Ferrari over the years in order to obtain a competitive advantage. Relevant to the issues in this Motion, while Mr. Francis has at times made these defamatory comments directly and using his own name, he has often worked through intermediaries, used other individuals within his company or

made "anonymous" postings or mailings that he delivered to those within the mineral rights community.

For example, Mr. Francis secretly created and utilized certain websites to anonymously post defamatory statements about Mr. Ferrari and then sent links to those websites to Mr. Ferrari's business associates, as well as other industry professionals. *See* Declaration of Garrett Long ("**Long Decl.**"), Ex. 2, *Ferrari v. Francis*, N.D. Tex., Case No. 3:23-cv-455 ("**Complaint**") ¶¶ 11, 13, 17.[2]

In order to create a buffer between himself and those statements, Mr. Francis hired a twice-convicted securities fraudster, Peter Lybrand a.k.a. Peter Tosto—a former broker with ties to the oil & gas industry—and Mr. Tosto's company, FindIt, to run an "Online AF Campaign" that created negative websites against Mr. Ferrari and use search engine optimization to direct mineral rights owners and potential investors to these websites. *See id.* ¶¶ 9-23. This "Campaign" included the development of at least two websites (*adamferrarioilandgaslawsuits.com* and *lawsuitoilanggas.com*) and various blog posts dedicated to disparaging Mr. Ferrari and his associated business, Phoenix Capital Group ("**Phoenix**"). *See id.* Mr. Francis spent years contacting industry participants and directed them to these

_____

[2] Unless otherwise stated, all exhibits referenced herein refer to the exhibits attached to the Declaration of Garrett Long.

websites, along with engaging in various other unlawful practices against Mr. Ferrari and Phoenix.

Mr. Leib Conducts "Due Diligence" on Phoenix

Mr. Ferrari has every reason to believe that Mr. Leib—the principal and founder of Sand Spring Advisors LLC ("**Sand Spring**")—is entangled in or associated with Mr. Francis' misconduct.

In July 2023, Mr. Leib started to contact Phoenix's employees claiming to be a broker who represented potential high-net worth investors in Phoenix.  Declaration of Curtis Allen ("**Allen Decl.**"), ¶¶ 5-6, Ex. 1.

Phoenix has thousands of active investors and has made contact with hundreds of thousands of potential investors over the years.  *Id.* ¶ 4.  Consequently, Phoenix is actively aware of the types of questions these investors ask, the ways they were introduced to Phoenix, and the type of due-diligence performed.  *Id.*  However, Mr. Leib's conduct raised immediate red flags and led to Phoenix putting him on a "do not contact" list.  *Id.* ¶ 5.  These red flags included Mr. Leib:

- Sending targeted, off-the-record messages to low-level Phoenix employees from his LinkedIn account and from his Sand Spring email address identifying himself as a "Senior Research Analyst" at Sand Spring.  *Id.* ¶¶ 6, 8, Exs. 1, 3.

- Offering these employees a "gratis $50 Amazon gift certificate" in return for sharing "off-the-record" information about the "general culture" of Phoenix Capital *and Adam Ferrari*. *Id.* ¶ 8, Ex. 3.

- Raising Mr. Ferrari's "controversial background," which he discovered by "looking on the web." *Id.* ¶ 10.

- Requesting a list of references about Phoenix from Phoenix's oil operators, but never explaining why he needed such information. *Id.* ¶ 7, Ex. 2.

- Claiming that he discovered Phoenix after seeing "some of [the company's marketing] webinars." *Id.* ¶ 8, Ex. 3. Phoenix has sophisticated ways of tracking how potential investors/brokers are introduced to Phoenix (its "investment funnel"), and it is extremely rare that a broker like Mr. Leib would land in a webinar directly.

All of these questions and requests substantially differ from questions Phoenix typically receives from its investors. *Id.* ¶ 5. No other broker or potential investor has performed "due diligence" in such a manner. *Id.* ¶ 9.

<u>The Document Subpoena and the Parties' Meet and Confer</u>

Due to the bizarre nature of Mr. Leib's conduct, his interest in Mr. Ferrari personally, the oftentimes surreptitious nature of his interactions with Phoenix, and the fact that several of his inquires mirrored statements that Mr. Francis has made,

on March 20, 2024, Mr. Ferrari issued the Document Subpoena to Mr. Leib.[3]  The Subpoena seeks two categories of documents related to the Texas Action and Mr. Leib's connection to Mr. Francis (and his affiliates), Mr. Ferrari, and Phoenix:

(1)  all documents and communications related to Adam Ferrari, Phoenix, and Mr. Francis; and

(2)  documents sufficient to identity Mr. Leib's discussions with third-parties relating to Adam Ferrari, Phoenix, and Mr. Francis.

*See* Ex. 3.  There is nothing objectionable about these requests (which are narrowly tailored to seek documents that are central to Mr. Ferrari's claims).  Nor has Mr. Leib ever articulated a proper objection to them.

Quite the opposite.  On May 6, 2024, Mr. Leib's counsel responded to the Subpoena via a letter (the "**Leib Letter**") and set forth a series of boilerplate, general objections that lacked any specific basis for withholding responsive documents. Ex. 5.  The Leib Letter claimed that all of the Subpoena's requests were irrelevant to the Texas Action, burdensome, and sought "confidential client materials." *Id.* at 3-4.  During the parties' May 31, 2024 meet and confer, Mr. Leib's counsel claimed that Mr. Leib discovered Phoenix while conducting routine investment due diligence for his client.  Long Decl., ¶ 16.  Mr. Leib's counsel relayed that he could not disclose the identity of that client, but that it was not Mr. Francis—since Mr. Leib purportedly

---

[3] The Document Subpoena was served on April 13, 2024.  *See* Exs. 3, 4.

only came to learn about Mr. Francis during the course of his due diligence on Phoenix.  *Id.*

Based on these and other subsequent discussions, Mr. Ferrari understood Mr. Leib's counsel to make three substantive objections to producing materials responsive to the Document Subpoena:  (1) the names of Mr. Leib's clients are confidential, as they would not want to disclose their identities to Phoenix; (2) Mr. Leib, as an investment professional, was merely conducting due diligence on Phoenix to evaluate a potential investment and did not want to turn over his analysis; and (3) Mr. Francis eventually told Mr. Leib that he did not want to discuss Mr. Leib's efforts and, in Mr. Leib's view, this meant he did not need to turn over any other documents related to Mr. Ferrari or Phoenix.

Standing on these objections, on June 3, 2024, Mr. Leib produced an email exchange between Mr. Francis and Mr. Leib that—in his counsel's view—showed that Mr. Leib did not have anything to do with Mr. Francis.[4]  However, this single document (which did not include the entire chain between Mr. Leib and Mr. Francis concerning Mr. Ferrari) created more questions than answers.  *See* Ex. 6.

First, the text of the email demonstrates that Mr. Leib had previously reached out to Mr. Francis, presumably about Mr. Ferrari and Phoenix.  The communication reveals that Mr. Francis thought that Mr. Leib was "quite determined in [his]

---

[4] Mr. Leib reproduced a similar version of this document on June 26, 2024.

objective to ***fill my inbox with unwanted updates*** on your personal endeavors ***as it relates to Phoenix/Ferrari***." *See id.* at 1-2 (emphasis added).

Second, the email indicates that Mr. Leib was conducting some clandestine operation designed to collect information about Phoenix and Mr. Ferrari, in order to "pursue[]" some form of "complaint" against Mr. Ferrari and/or Phoenix and that Mr. Leib had "opinions and alleged findings on this subject matter." *See id.* In other words, this single email reveals that Mr. Leib was not performing "due-diligence" on a potential investment in Phoenix for a client, which stands directly counter to both Mr. Leib's representations and that of his counsel. Ex. 7, at 9.

When confronted with these inconsistencies, Mr. Leib's counsel continued to articulate unfounded confidentiality objections, asserting that any documents Mr. Leib possesses relate to an unidentified "client" that Mr. Leib cannot disclose. *See, e.g.*, *id.* He also double-downed on his representation that Mr. Leib was simply performing due-diligence related to a potential investment in Phoenix by one of his clients. *See, e.g.*, *id.* ("We reserve all rights to any other responsive communications from Mr. Leib, ***all of which concern his due diligence obligations to his client.***") (emphasis added); *id.* at 8 ("[W]e can think of no grounds, that would entitle you to communications from Mr. Leib, which . . . ***all concern his due diligence obligations to his client.***") (emphasis added).

To put it mildly, these representations only increased Mr. Ferrari's suspicions. For example, perhaps unknown to Mr. Leib's counsel at the time, Mr. Leib had <u>previously disclosed the identity of the clients</u> he was working for to Phoenix. Allen Decl., ¶ 6, Ex. 1. Thus it was illogical that Mr. Leib would refuse to turn over materials because he wanted to keep these clients' identify a secret.

Mr. Ferrari attempted to resolve his disputes with Mr. Leib at meet and confer conferences on May 31, 2024 and June 21, 2024. Long Decl., ¶ 15. Mr. Leib maintained his objections, however, and has refused to produce the responsive documents that he undoubtedly possesses, leaving even the single document he produced incomplete (*i.e.*, Mr. Leib redacted other portions of the email chain to hide what he was saying to Mr. Francis about Ferrari and Phoenix). Through subsequent correspondence, the parties have solidified their positions.

Additionally, on June 12, June 18, June 20, June 21, and June 24, 2024, Mr. Ferrari's counsel asked Mr. Leib's counsel if Mr. Leib would accept service of a separate subpoena *ad testificandum*. Such requests were ignored, and Mr. Leib appears to be evading service, as Mr. Ferrari has been unable to serve the Deposition Subpoena despite multiple efforts (and despite his prior success in serving the Document Subpoena). Long Decl., ¶ 17; Ex. 7, at 1-6.

## ARGUMENT

## I.    THE SUBPOENA IS VALID AND ENFORCEABLE IN THIS COURT.

Rule 45 of the Federal Rules of Civil Procedure provides that an attorney, as an officer of the court, may issue a subpoena on behalf of a court in which the attorney is authorized to practice, or for a court in a district in which document production is to be made. *See* Fed. R. Civ. P. 45(a)(3). "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

Here, the Document Subpoena contains all the required information, and service was properly made on Mr. Leib. *See* Exs. 3, 4. Further, Mr. Leib has lodged no objection to the validity of the Document Subpoena. *See, e.g.*, Exs. 5, 7. The Document Subpoena seeks compliance in this District—specifically, Morris Plains New Jersey—which is near where, upon information and belief, Mr. Leib's residence is located. *See* Long Decl., ¶ 14; Ex. 3. Accordingly, the Subpoena is valid and enforceable in this Court.

## II. THE REQUESTED INFORMATION IS RELEVANT TO THE UNDERLYING ACTION.

Federal Rules of Civil Procedure 45 and 34(c) respectively control the issuance of a subpoena and a third-party's refusal to comply with such a subpoena.

The scope of discovery in federal litigation is broad. *See Gould v. O'Neal*, No. 17-100 (JMV), 2019 WL 4686991, at *2 (D.N.J. Sept. 26, 2019); *OMS Invs., Inc. v. Leb. Seaboard Corp.*, No. 08-2681 (AET), 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to the claim or defense of any party." Fed. R. Civ. P 26(b)(1). Federal Rule of Civil Procedure 45 permits a party to subpoena from a non-party any discovery that otherwise would be permissible under Rule 26(b). *Gould*, 2019 WL 4686991, at *3; *OMS Invs.*, 2008 WL 4952445, at *2.

Once the subpoenaing party shows the relevance of the information sought, a non-party resisting production must explain why discovery should not be permitted. *Gould*, 2019 WL 4686991, at *3. A subpoena is considered unduly burdensome only when the Court finds that it "is unreasonable or oppressive." *OMS Invs.*, 2008 WL 4952445, at *2. The non-party resisting production has a heavy burden of demonstrating the unreasonableness or oppressiveness of the subpoena. *Gould*, 2019 WL 4686991, at *3; *OMS Invs.*, 2008 WL 4952445, at *2.

## A.    Documents Related to Mr. Leib's Contacts with Mr. Francis and About Mr. Ferrari and Phoenix are Highly Relevant

As an initial matter, Mr. Leib has never raised an objection that the Document Subpoena is burdensome or oppressive. The only substantive objections relate to confidentiality and relevance.

Request Nos. 1 and 3 of the Document Subpoena seek Mr. Leib's documents and communications relating to Mr. Ferrari and Phoenix with Mr. Francis or any third party. Ex. 3, at 6. Request Nos. 2 and 4 of the Document Subpoena seek documents and communications between Mr. Leib and Mr. Francis or any third party about Mr. Francis and Mr. Francis' affiliates. *Id.* These documents are highly relevant, particularly in view of (1) the way in which Mr. Francis has defamed Mr. Ferrari and interfered with Phoenix and (2) the misrepresentations made by Mr. Leib and his counsel.

There is no doubt that Mr. Leib possesses responsive documents and communications related to Mr. Ferrari and/or Phoenix—his counsel has admitted as such. *See, e.g.*, Ex. 7, at 9; Ex. 6, at 1-2. Instead, Mr. Leib refuses to produce these highly responsive documents, arguing that the lone (redacted) document he did produce "proves" that "Mr. Lieb [*sic*] has never worked with Mr. Francis in any way" (Ex. 7, at 9), because **_Mr. Francis_** states in the email that he has "no interest in assisting or participating in any form in this complaint." Ex. 6, at 1-2.

However, as repeatedly explained to Mr. Leib's counsel, the fact that Mr. Francis apparently put off Mr. Leib (despite Mr. Francis' years' long campaign to spread defamatory information to anyone who would listen in the mineral rights industry) does not provide Mr. Ferrari with complete solace, especially given the fact that the Texas Action was pending when these discussions took place. The

Texas Action is based on a prolonged campaign led by Mr. Francis, who employed a wide array of agents and resources to create and disseminate false, misleading, disparaging, and defamatory information about Mr. Ferrari and his affiliated companies. As explained above, the record facts demonstrate that Mr. Francis—in directing such efforts—<u>has often used third-parties to accomplish his goals</u>.

The sole document produced by Mr. Leib clearly indicates that Mr. Leib and Mr. Francis were in communication about Mr. Ferrari. *See id.* at 1 ("[Y]our [Mr. Leib] objective [is] to fill my [Mr. Francis] inbox with unwanted updates on your personal endeavors as it relates to Phoenix/Ferrari."). Additionally, the at-issue correspondence between Mr. Leib and Mr. Francis occurred on August 22, 2023—<u>while the Texas Action was pending</u>—which makes this communication from Mr. Francis (who likely was aware of his discovery obligations) highly suspect. *Id*.

Additionally, Mr. Leib's involvement becomes even more suspicious when considering the single document Mr. Leib produced has Mr. Francis making reference to a "complaint" Mr. Leib was "pursuing" related to his "personal endeavors," which stands in stark contrast to the representations made by Mr. Leib to Phoenix and his counsel's statements that Mr. Leib was simply pursuing an investment opportunity on behalf of an unnamed client. *Compare* Ex. 7, at 8 ("all [documents] concern his due diligence obligations to his client," *with* Ex. 6, at 2 (describing "complaint" Mr. Leib was "pursuing" against Mr. Ferrari and Phoenix).

13

All of this must be taken together with the red flags described in detail above that Mr. Leib raised with Phoenix during his "due diligence" efforts, which is how Mr. Leib landed on Mr. Ferrari's radar in the first place and led to the Document Subpoena. When challenged on, at least some of these contacts, Mr. Leib's counsel refused to explain the contradictions. *See, e.g.*, Ex. 7, at 5-6. He also refused to explain why Mr. Leib was refusing to produce documents on the basis that he did not want to disclose the identity of his clients when he had already disclosed his client list to Phoenix months earlier. *Id.* at 5.

All of these facts raise more questions than answers. Mr. Leib was clearly engaged in activity relating to Mr. Ferrari, and given that Mr. Leib was communicating with Mr. Francis—who we know has used anonymous associates to facilitate his defamation campaign (Ex. 2, ¶¶ 9-23)—Mr. Ferrari should be given access to these documents to ascertain the full extent of their relationship (*e.g.*, why Mr. Leib was contacting Phoenix employees about the company and Mr. Ferrari and who directed him to do so). Mr. Ferrari should be permitted to ascertain for himself the extent of the relationship between Mr. Leib and Mr. Francis, especially given the liberal standard of permissible discovery in federal court. *See Gould*, 2019 WL 4686991, at *2. Such information surely falls within the scope of third-party discovery permitted under the Federal Rules. *See OMS Invs.*, 2008 WL 4952445, at *2 (third-party discovery is only impermissible when "unreasonable or oppressive").

**B.    Mr. Leib's Confidentiality Objection Fails.**

Mr. Leib has maintained his refusal to produce responsive documents on the basis of purported confidentiality obligations owed to his "client." *See, e.g.*, Ex. 7, at 8-9. This purported objection fails for a couple of reasons.

<u>First</u>, as explained above, Mr. Leib's prior actions in disclosing the names of his clients to Phoenix's employees are wholly inconsistent with this new position he has taken about being unable to disclose his client's identity in the face of a duly issued subpoena. Allen Decl., ¶ 6, Ex. 1.

<u>Second</u>, courts in this Circuit routinely reject such objections, finding the protections afforded under Protective Orders to be sufficient. *See Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 14-4046 PGS, 2014 WL 4272732, at *4 (D.N.J. Aug. 28, 2014) (compelling non-party's production of documents reflecting proprietary methodology and noting that the non-party's "concerns can be addressed by supplementing the Parties' existing Stipulated Protective Order with an 'Attorneys' Eyes Only' provision," which in this case already exists); *see also W. Penn Allegheny Health Sys., Inc. v. UPMC*, No. 2:09-cv-00480-JFC, 2013 WL 2134101, at *6 (W.D. Pa. Feb. 15, 2013) (recommending granting motion to compel non-party's production of documents, noting that protective order applies to non-parties, and non-party failed to offer persuasive explanation as to why such protections were insufficient).

As Mr. Ferrari's counsel has explained to Mr. Leib's counsel, the Northern District of Texas has entered a Protective Order that applies to production of non-party information.  Ex. 8, at 2-3; Ex. 7, at 7-8; Ex. 9, ¶ 15 (parties producing documents or information pursuant to a Rule 45 subpoena "may designate produced documents or information as 'Confidential Information' pursuant to the terms of this Order").  The availability of the Protective Order should sufficiently address any serious concerns Mr. Leib has about the confidentiality of his communications with his "clients."

Accordingly, good cause does not exist to allow Mr. Leib to refuse to produce responsive documents on confidentiality grounds.

## III.    THE COURT SHOULD ORDER MR. LEIB TO ACCEPT SERVICE OF THE SUBPOENA AD TESTIFICANDUM

Federal Rule of Civil Procedure 45(b)(1) requires service of a subpoena on an individual by personal service.  However, when significant efforts to personally serve a witness fail, courts within and outside the Third Circuit are keen to permit alternative methods of service.  *See, e.g.*, *N.J. Bldg. Laborers' Statewide Benefit Funds v. Torchio Bros., Inc.*, No. 08–552, 2009 WL 368364, at *2 (D.N.J. Feb. 11, 2009) ("Certified mail serves the same purpose as Rule 45(b) which is to 'mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service.'") (citation omitted); *Halawani v. Wolfenbarger*, No. 07–15483, 2008 WL 5188813, at *4 (E.D. Mich. Dec. 10, 2008) (recognizing that

service of a subpoena by mail "may assure proper delivery" for purposes of Fed. R. Civ. P. 45); *Ultradent Prods., Inc. v. Hayman*, No. M8-85 RPP, 2002 WL 31119425, at \*4 (S.D.N.Y. Sept. 24, 2002) (granting motion to compel subpoena compliance and accepting service by mail because "Rule 45 only requires delivery and not personal service"); *Cordius Trust v. Kummerfeld*, No. 99 CIV. 3200(DLC), 2000 WL 10268, at \*1 (S.D.N.Y. Jan. 3, 2000) (same).

As detailed above, Mr. Ferrari has attempted to serve a subpoena *ad testificandum* on Mr. Leib—through his counsel—since June 12, 2024.  Mr. Leib's counsel has repeatedly refused to accept service on Mr. Leib's behalf and all attempts to serve Mr. Leib personally have failed.  Specifically, Mr. Ferrari's counsel asked Mr. Leib's counsel on five occasions—June 12, June 18, June 20, June 21, and June 24, 2024—to accept service of the Deposition Subpoena.  Long Decl., ¶ 17; Ex. 7.  These requests were ignored.

Mr. Ferrari has also tried personally serving Mr. Leib, via a process server, several times at his residences in Morristown, New Jersey and Tannersville, New York.  Long Decl., ¶ 18.  This includes attempts at his Morristown residence on June 26 (twice), June 27, July 8 (twice), and July 9, 2024, and at his New York residence on June 28, July 1 (twice), July 2, and July 9, 2024 (twice).  *Id.*.  Mr. Ferrari also attempted to serve Mr. Leib by (i) affixing a copy of the Deposition Subpoena to the door of Mr. Leib's New York residence and (ii) mailing him a copy of the Deposition

17

Subpoena on July 11, 2024. *Id.*; *see also* N.Y. C.P.L.R. § 308(4) (New York's Nail and Mail service procedure). Mr. Leib has not accepted, Long. Decl., ¶ 18, despite Mr. Leib previously accepting service of the Document Subpoena at his New York residence. *Id.*.

Mr. Ferrari's Deposition Subpoena provides that the location of the deposition is at Veritext, located at 290 W. Mount Pleasant Avenue, Suite 3200, Livingston, NJ 07039. Ex. 10. Veritext is approximately 8 miles from Mr. Leib's residence in Morristown, New Jersey. Long Decl., ¶ 14. Therefore, the location of the deposition is in compliance with Federal Rule 45(c)(1)(A)'s 100 mile distance from where Mr. Leib resides. If Mr. Leib prefers to be deposed in a more convenient location, however, Mr. Ferrari is willing to make that accommodation.

Thus, for good cause shown, Mr. Ferrari respectfully requests that this Court deem Mr. Ferrari's numerous attempts to serve Mr. Leib effective under Federal Rule of Civil Procedure 45 and order Mr. Leib to accept service of the subpoena *ad testificandum*. The Court should further order Mr. Leib to comply with that subpoena and submit to a deposition in this case. Alternatively, the Court should permit Mr. Ferrari to effect substituted service by other known contact methods— *e.g.*, (1) via email to Mr. Leib's counsel; or (2) nailing and mailing the subpoena at Mr. Leib's New York residence, where he was previously served. N.J. Ct. R. 4:4.

## IV.    CONCLUSION

For the foregoing reasons, the documents requested by the Document Subpoena are relevant to the Texas Action, and Mr. Leib has not articulated any valid basis for withholding them.  Accordingly, Mr. Ferrari respectfully requests that the Court order Mr. Leib to produce all documents responsive to the Subpoena within 10 days of its Order.  Additionally, Mr. Ferrari requests that the Court order Mr. Leib to accept service of Mr. Ferrari's subpoena *ad testificandum* and sit for a deposition.


Dated: July 12, 2024                           Respectfully submitted,

                                               */s/ Kevin M. McDonough*
                                               Kevin M. McDonough
                                               LATHAM & WATKINS LLP
                                               1271 Avenue of the Americas
                                               New York, NY 10020
                                               Telephone: (212) 906-1200
                                               kevin.mcdonough@lw.com

                                               John T. Ryan *(pro hac vice forthcoming)*
                                               LATHAM & WATKINS LLP
                                               12670 High Bluff Drive
                                               San Diego, CA 92130
                                               Telephone: (858) 523-5400
                                               Facsimile: (858) 523-5450
                                               jake.ryan@lw.com

                                               Andrew R. Gray (*pro hac vice forthcoming*)
                                               LATHAM &WATKINS LLP
                                               650 Town Center Drive, 20th Floor
                                               Costa Mesa, CA 92626

Telephone: (714) 540-1235
Facsimile: (714) 755-8290
andrew.gray@lw.com

Garrett S. Long (*pro hac vice
forthcoming)*
LATHAM &WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
garrett.long@lw.com

*Attorneys for Petitioner Adam Ferrari*